## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARPENTERS COMBINED FUNDS INC.,** | : | **CIVIL ACTION NO. 1:15-CV-1091** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KELLY SYSTEMS, INC.** and **NOVINGER GROUP, INC.,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Carpenters Combined Funds, Inc. ("Carpenters") filed the above-captioned action pursuant to Section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145. Carpenters seeks fringe benefit contributions from defendants Kelly Systems, Inc. and Novinger Group, Inc. (collectively, "defendants") pursuant to collective bargaining agreements entered into between Greater Pennsylvania Regional Council of Carpenters ("Union") and Novinger's, Inc. ("Novinger's"). Presently before the court is defendants' motion (Doc. 6) to dismiss with prejudice Count III of Carpenters' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, the court will grant defendants' motion to dismiss.

---

[1] Carpenters originally filed its complaint in the United States District Court for the Western District of Pennsylvania. (See Doc. 1). The instant motion, also originally filed with that court, included a request to transfer venue to the Middle District of Pennsylvania, and the Honorable Judge Fischer granted the venue transfer request on May 29, 2015. (Doc. 18). Thus, the only remaining issue is defendants' request to dismiss Count III of the complaint.

I.    **Factual Background and Procedural History**[2]

Plaintiff Carpenters is a Pennsylvania nonprofit corporation that administers and acts as a collection agent for certain union employee benefit funds. (Doc. 1 ¶¶ 3-5). These funds are employee fringe benefit plans established and maintained within the meaning of ERISA. (Id. ¶ 5). Novinger's, which is not a party to the instant litigation, signed several collective bargaining agreements ("CBAs") with the Union, requiring Novinger's to make monthly fringe benefit contributions to the funds. (Id. ¶ 11). The trustees of the funds, in turn, have designated Carpenters as their agent to collect contributions owed pursuant to the CBAs. (Id. ¶ 5).

Carpenters alleges that defendants—both non-Union entities and nonsignatories to the CBAs—are nonetheless obligated to make payments to the fringe benefit funds pursuant to Section 515 of ERISA. (Id. ¶¶ 2, 15-16, 22-23, 30-31). Carpenters emphasizes that defendants and Novinger's had, *inter alia*, the same principal ownership, the same or substantially similar management, centralized control of labor relations by the principal owner, the same address, similar operations with the same or similar projects, and shared employees and business property. (Id. ¶ 10). Thus, Carpenters contends that defendants are obligated by Section 515 to make payments pursuant to the CBAs under a single employer theory of liability (Count I) and an alter ego theory of liability (Count II), or, alternatively, a joint employer theory of liability (Count III). (Id. ¶¶ 12-33).

---

[2] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the complaint as true, and view them in the light most favorable" to Carpenters. Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

Assuming *arguendo* that the court finds defendants to be merely joint employers with Novinger's, defendants assert that liability under Section 515 cannot obtain.  (See Doc. 7 at 18-20).  Specifically, defendants argue that, as nonsignatories to the CBAs with no contractual obligation to contribute to the funds, Section 515 imposes no independent legal obligation on them to make such payments.  (Id. at 18-19).

The motion has been fully briefed and is ripe for disposition.

II.   **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  The plaintiff is required "to plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).

## III.  Discussion

The dispute *sub judice* presents a discrete legal inquiry: whether Section 515 of ERISA contemplates extending liability for collective bargaining agreement obligations to a nonsignatory on the basis of a "joint employer" relationship.[3]  Both parties acknowledge that the Third Circuit has not directly addressed this issue. For the following reasons, the court concludes that joint employer status, without more, is insufficient to extend Section 515 liability to a nonsignatory.

### A.    Joint Employer Doctrine

Joint employment exists when separate and distinct business entities share or co-determine matters that control "the essential terms and conditions of employment."  NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1123 (3d Cir. 1982).  Joint employers are "independent legal entities that have merely 'historically chosen to handle jointly  .  .  .  important aspects of their employer-employee relationship.'"  Id. at 1122 (quoting NLRB v. Checker Cab Co., 367 F.2d 692, 698 (6th Cir. 1966)).  The crucial determination in the joint employment context is whether both employers control the labor relations of the group of employees.  Id. at 1122-23 (citing NLRB v. Condenser Corp. of Am., 128 F.2d 67, 72 (3d Cir. 1942)).

The Third Circuit has applied the joint employer doctrine to impose liability on employers in the context of Title VII employment discrimination, Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997); the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 148 (3d

---

[3] Defendants have assumed that, for purposes of the instant motion, Carpenters could establish that defendants are joint employers with Novinger's. (See Doc. 7 at 18 n.4).  Accordingly, there are no questions of fact to determine.

Cir. 2014); and the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169,

Browning-Ferris, 691 F.2d at 1119.  As noted *supra*, however, the Third Circuit has

not expressly determined whether the joint employer doctrine is a viable basis for

application of Section 515 liability.

**B.    Section 515 of ERISA**

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to
> a multiemployer plan under the terms of the plan or
> under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law, make such
> contributions in accordance with the terms and
> conditions of such plan or such agreement.

29 U.S.C. § 1145.  This section, added to ERISA in 1980, was intended to "allow

multiemployer welfare funds to rely upon the terms of collective bargaining

agreements and plans as written, thus 'permit[ting] trustees of plans to recover

delinquent contributions efficaciously[.]'"  Cent. Pa. Teamster's Pension Fund v.

McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir. 1996) (quoting 126 CONG.

REC. 23,039 (1980) (remarks by Rep. Thompson)).   By enacting Section 515,

Congress "sought to ensure that benefit plans are able to rely on [the] contribution

promises of employers[.]"  Id. (citation omitted).  The provision was meant "to give

employers a strong incentive to honor their contractual obligations to contribute

and to facilitate the collection of delinquent accounts."  Laborers Health & Welfare

Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 547

(1988).

Hence, as a general rule, actions under Section 515 for delinquent collective bargaining agreement contributions may only be brought against signatories to the agreement.  See Xaros v. U.S. Fid. & Guar. Co., 820 F.2d 1176, 1179 (11th Cir. 1987) ("Courts . . . have generally refused to expand the definition of employer under [Section 515 of] ERISA to include entities which were not a party to the collective bargaining agreement under which suit is brought.").  In other words, such actions are viable against those employers who are parties to the agreement and thus are "obligated to make contributions  . . . under the terms of the collectively bargained agreement."  See id.; 29 U.S.C. § 1145.  But the fact that an entity is not a signatory to a collective bargaining agreement does not necessarily insulate it from Section 515 liability to make contributions according to the terms of the agreement.  The Third Circuit, as well as its sister circuits, have extended Section 515 liability to nonsignatory entities in several limited situations.

Specifically, nonsignatories may be liable for contributions under a collective bargaining agreement if they are found to be the alter ego of a signatory.  See Solomon v. Klein, 770 F.2d 352, 353-54 (3d Cir. 1985) (declining to hold corporate shareholders or officers liable under Section 515 for delinquent contributions owed by signatory corporation absent a showing of alter ego liability); see also Trs. of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc., 572 F.3d 771, 776 (9th Cir. 2009) ("A non-signatory [entity] may also be liable if the non-signatory is the 'alter ego' of the signing [entity].") (citation omitted); Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 307 (1st Cir. 1998) ("A finding that two employers are alter egos will bind the

6

nonsignatory to a collective bargaining agreement between the union and the nonsignatory's alter ego."). Nonsignatory employers may also be obligated to pay delinquent contributions owed pursuant to a collective bargaining agreement if they are found to be successors to the signatory employer. See Einhorn v. M.L. Ruberton Constr. Co., 632 F.3d 89, 99 (3d Cir. 2011) ("[A] a purchaser of assets may be liable for a seller's delinquent ERISA fund contributions . . . where the buyer had notice of the liability prior to the sale and there exists sufficient evidence of continuity of operations between the buyer and seller."); accord Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990).

Other appellate courts also have shown a willingness to extend Section 515 liability to a nonsignatory employer for contributions owed when the employer is found to be a "single employer"[4] with the signatory entity and, together, their employees constitute a single bargaining unit. See Carpenters Local Union No. 1846 of United Bhd. of Carpenters v. Pratt-Farnsworth, Inc., 690 F.2d 489, 526-27 (5th Cir. 1982) (finding single employer liability a viable theory under Section 515 to hold a nonsignatory employer to the terms of a collective bargaining agreement); accord Trs. of Screen Actors, 572 F.3d at 776 (citing Carpenters Local Union No. 1846, 690 F.2d at 526)). Finally, the Second Circuit has held that a nonsignatory

---

[4] Generally, a single employer relationship exists when "two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.' The question in the 'single employer' situation, then, is whether the two nominally independent enterprises, in reality, constitute only *one integrated enterprise*." Browning-Ferris, 691 F.2d at 1122.

may be found liable under Section 515 for a signatory's collective bargaining agreement obligations when the nonsignatory "defrauds or conspires to defraud a benefit fund of required contributions." Leddy v. Standard Drywall, Inc., 875 F.2d 383, 388 (2d Cir. 1989).

### C.    Applicability of Joint Employer Liability to Section 515 of ERISA

### 1.    *Carpenters' Argument for Extending Section 515 Liability to Joint Employer Nonsignatories*

Carpenters claims that joint employment is a viable theory of liability under Section 515 to bind the nonsignatory defendants to the obligations contained in the CBAs executed by Novinger's. In support, Carpenters cites to court decisions within and outside of this circuit holding that a nonsignatory can be liable under successor, merger, or alter ego liability for contributions owed pursuant to a collective bargaining agreement signed by another entity.[5] (See Doc. 12 at 14-15). As these theories of liability are entirely distinct from joint employer liability, the court finds the referenced cases to be inapposite and unhelpful to the question at

---

[5] See Einhorn, 632 F.3d at 99 (successor liability); Teamsters Pension Tr. Fund of Phila. & Vicinity v. Littlejohn, 155 F.3d 206, 209-10 (3d Cir. 1998) (merger liability); Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc., 808 F. Supp. 2d 89, 95-96 (D. D.C. 2011) (alter ego liability). Even farther afield is Carpenters' reliance on Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002), which addressed alter ego liability in the context of ERISA withdrawal liability, rather than unpaid pension contributions pursuant to Section 515.

hand.[6]  Carpenters identifies two district court decisions which, at first blush,

appear to favor applying joint employer liability in the Section 515 context.  The

court finds both cases unpersuasive.

In Hardy v. Kaszycki & Sons Contractors, Inc., 870 F. Supp. 489 (S.D.N.Y.

1994), the district court denied a defendant's motion for summary judgment, finding

that material questions of fact remained concerning whether the nonsignatory

defendant was a joint employer and thus could be liable under Section 515 for

delinquent contributions owed pursuant to a collective bargaining agreement

signed by another entity.  Id. at 495.  In its reasoning, the district court claimed that

the Second Circuit had twice found joint employment to be a viable theory to

extend Section 515 liability to nonsignatories, citing to Diduck v. Kaszycki & Sons

Contractors, Inc. (Diduck I), 874 F.2d 912 (2d Cir. 1989), and Diduck v. Kaszycki &

---

[6] Equally unconvincing are the cases upon which Carpenters relies for the proposition that courts in this circuit have implicitly accepted application of the joint employer doctrine under Section 515 by not explicitly rejecting it.  None of the referenced cases contains any holding on, or even a passing discussion of, the viability of joint employer liability for nonsignatories in the Section 515 context. Thus, these cases are of little value in deciding the instant motion.  See United Food & Commercial Workers Union & Participating Food Indus. Emps. Tri-State Health & Welfare Fund v. Super Fresh Food Markets, Inc., 352 F. App'x 721, 726 (3d Cir. 2009) (observing that appellants argued that "alter-ego/joint employer theories of liability" were viable means to recover delinquent contributions under Section 515, but declining to address either theory as no delinquent contributions existed); United Food & Commercial Workers Union v. Fleming Foods E., Inc., 105 F. Supp. 2d 379, 388-90 (D. N.J. 2000) (finding Section 515 liability under alter ego theory of liability); Crimmins v. Arco Chem. Co., No. 98-4251, 1999 WL 199750, at *8-9 (E.D. Pa. Apr. 7, 1999) (requesting further briefing from parties on applicability of joint employer doctrine in the context of purported retirement plan benefits owed for work performed for an employer not recognized in the plan); Michelin Tire Corp. v. Trs. of Warehouse Emps. Union Local 169, No. 95-4809, 1996 WL 144428, at *2-4 (E.D. Pa. Mar. 2, 1996) (applying joint employer doctrine to ERISA withdrawal liability), aff'd, 173 F.3d 421 (3d Cir. 1998) (table).

Sons Contractors, Inc. (Diduck II), 974 F.2d 270 (2d Cir. 1992), abrogated on other grounds as recognized by Gerosa v. Savasta & Co., 329 F.3d 317 (2d Cir. 2003). Id. at 494. However, in neither Diduck I nor Diduck II did the Second Circuit squarely address the applicability of joint employer liability in the Section 515 context.

In Diduck I, the circuit panel merely reversed the district court's dismissal of a derivative action against several nonsignatory defendants for alleged obligations to pay collective bargaining agreement contributions owed by a delinquent signatory employer. Diduck I, 874 F.2d at 916. In reasoning that such a claim should have been pursued directly by the funds' trustees, the panel noted both that the nonsignatory defendants had already made some contributions on behalf of the signatory, and that the district judge had mentioned "the [nonsignatory] defendants may be liable under a joint employer theory of liability." Id. at 918. The court provided no discussion of the viability of joint employer liability in the Section 515 context. Hence, this dicta lends little support to the Hardy court's conclusion that Diduck I represents the Second Circuit's endorsement of the joint employer doctrine for Section 515 nonsignatory liability.

Diduck II is similarly inapposite. There, the Second Circuit simply reversed the district court's dismissal of the plaintiff's derivative Section 515 claim against several nonsignatories, finding that the district court had erroneously determined that the plaintiff had not satisfied the demand requirement. Diduck II, 974 F.2d at 287. The panel noted that the funds' trustees had failed to act in the face of information prompting action, thus making demand on the trustees futile and

10

thereby excused.  Id.  Diduck II is completely silent as to the viability of joint employer liability in the Section 515 context.

Finally, Carpenters cites to Southern Electrical Health Fund v. Kelley, 308 F. Supp. 2d 847 (M.D. Tenn. 2003), aff'd sub nom. S. Elec. Health Fund v. Heritage Mut. Ins. Co., 147 F. App'x 497 (6th Cir. 2005).  By expressly invoking the doctrine, the district court and the Sixth Circuit appear to support joint employer liability in the context of Section 515.  Both courts, however, misapprehend the joint employer analysis, describing its four factors as follows: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership.  See Kelley, 308 F. Supp. 2d at 867; Heritage Mut., 147 F. App'x at 506. These factors comprise the single employer test, not the joint employer test.  See Browning-Ferris, 691 F.2d at 1122.  Additionally, the district court in Kelley did not solely rely on joint employer status to impose liability under ERISA.  The court also required a finding that the joint employer was a fiduciary of the benefits plan within the meaning of ERISA and that he breached his fiduciary duty.  Kelley, 308 F. Supp. 2d at 867-68.  Such a breach of fiduciary duty alone is sufficient for imposing ERISA liability, regardless of whether the fiduciary is an employer.  See 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . .").

The court therefore finds that <u>Hardy</u>, *supra*, and <u>Kelley</u>, *supra*, are unpersuasive and do not support Carpenters' proposed extension of Section 515 liability to nonsignatory employers solely on the basis of joint employer status.

**2.     *Joint Employer Status Alone Does Not Extend Section 515 Liability to Nonsignatories***

The text of Section 515, its distinctions from other federal labor laws, the cases that have squarely addressed the instant question, and the underlying rationales of the pertinent theories of liability all militate against extending Section 515 liability to mere joint employer nonsignatories.

First and foremost, the plain language of Section 515 compels a narrower application of the statute than that sought by Carpenters.  Rather than applying to any employer, Section 515 specifically targets an "employer *who is obligated to make contributions*" under a multiemployer plan or collective bargaining agreement. 29 U.S.C. § 1145 (emphasis added).  As noted earlier, this particular statute was enacted to address the specific problem of employers failing "to make their 'promised contributions' on a regular and timely basis." <u>Laborers Health & Welfare</u>, 484 U.S. at 546 (citation omitted).  Section 515, along with its companion section that provides for enforcement through a unique federal cause of action, <u>see</u> 29 U.S.C. § 1132, was meant "to give employers a strong incentive to honor *their contractual obligations to contribute* and to facilitate the collection of delinquent accounts." <u>Id.</u> at 547 (emphasis added).  Thus, Congress specifically intended Section 515 to apply to employers who had some independent obligation to

contribute to employee-benefit plans, either because of the terms of a multiemployer plan or a collective bargaining agreement.

This distinction is critical.  A finding of joint employer status is sufficient to impose liability in situations involving the FLSA or the NLRA because both statutes create new obligations and unilaterally impose them on employers.  Section 515 of ERISA, however, does not impose such obligations on employers; rather, it serves to enforce only pre-existing contractual obligations independently assumed by employers through collective bargaining agreements or employee benefit plans.  In other words, an employer's obligations under the FLSA and NLRA stem from the statutes themselves, whereas an employer's ERISA obligations stem from, and are limited to, those obligations voluntarily assumed by the employer by contract.  <u>See</u> <u>Leddy</u>, 875 F. 2d at 387 (citing <u>Int'l Bhd of Painters & Allied Trades Union v. George</u> <u>A. Kracher, Inc.</u>, 856 F.2d 1546, 1549 (D.C. Cir. 1988)); <u>see</u> <u>also</u> <u>Laborers Health &</u> <u>Welfare</u>, 484 U.S. at 834 (refusing to extend Section 515 of ERISA to an unfair labor practice issue properly governed by the NLRA, noting "[t]he text of § 515 plainly describes the employer's contractual obligation to make contributions but omits any reference to a noncontractual obligation imposed by the NLRA").

Courts that have squarely addressed the instant question have rejected joint employer liability under Section 515 for nonsignatories to collective bargaining agreements.  In <u>Trustees of Screen Actors Guild-Producers Pension & Health Plans</u> <u>v. NYCA, Inc.</u>, 572 F.3d 771 (9th Cir. 2009), trustees of certain employee benefit plans claimed that a defendant that had not signed the collective bargaining agreement was nonetheless liable under Section 515 for unpaid contributions as a

13

joint employer.  Id. at 774.  The Ninth Circuit soundly rejected this argument.  Id. at 776.  In declining to extend joint employer liability to Section 515 of ERISA, the court explained that the plain language of this provision does not impose any "independent obligation upon employers; it merely provides a federal cause of action to enforce *pre-existing* obligations created by collective bargaining agreements."  Id.

In Olivieri v. P.M.B. Construction, Inc., 383 F. Supp. 2d 393 (E.D.N.Y. 2005), the district court reached a similar conclusion.[7]  As in Trustees of Screen Actors Guild, trustees of employee benefit funds were attempting to hold a nonsignatory liable under Section 515 for collective bargaining agreement contributions solely on the basis of joint employer status.  Id. at 397, 399.  The Olivieri court, assuming joint employment could be proven, rejected the trustees' argument.  Id. at 397, 405.  In a thorough and well-reasoned opinion, the court systematically addressed the language of Section 515, the differences between ERISA and other labor laws, and the relevant (albeit limited) case law.  Id. at 397-405.  It concluded that—absent a claim of alter ego or fraud—mere joint employer status is insufficient to hold a

---

[7] The district court in Olivieri acknowledged the Southern District of New York's decision in Hardy.  Consistent with this court's analysis *supra*, the Olivieri court rejected Hardy for its reliance on the inapposite Diduck cases.  See Olivieri, 383 F. Supp. 2d at 399-401.

nonsignatory liable under Section 515 for collective bargaining agreement obligations.  Id. at 405.[8]

Finally, it makes practical sense to extend liability under Section 515 to nonsignatories that are found to be single employers with, or alter egos of, signatories to collective bargaining agreements, but not to mere joint employers.  As the Ninth Circuit explained,

> [Single employer and alter ego] theories attempt to determine whether the two entities are, in reality, one and the same.  If the non-signatory company is really the same as the signatory company, then it is fair to say that the purported non-signatory is actually a signatory and therefore an "employer who is obligated to make contributions" within the meaning of § [515].  The . . . "joint employer" theory is completely different.

Trs. of Screen Actors, 572 F.3d at 776-77.  Indeed, quite to the contrary of single employers or alter egos, joint employers are separate legal entities that merely share control over the employees.  The joint employer doctrine may be sufficient to bring nonsignatory employers within the obligations of other federal labor laws, but it is simply not enough to bring them within Section 515's meaning of an employer who is obligated to make contributions pursuant to a collective bargaining

---

[8] It is true, as Carpenters notes, that another district court in the Second Circuit has stated that "it is an open question in this Circuit whether the joint employer doctrine is applicable to cases under ERISA and the MPPAA."  Div. 1181 Amalgamated Transit Union–N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ., No. 13-cv-9112, 2014 WL 4370724, at *7-8 (S.D.N.Y. Aug. 27, 2014).  However, Div. 1181 addressed withdrawal liability—a completely separate issue under ERISA with unique statutory provisions and definitions.  See 29 U.S.C. §§ 1381-1405.  Thus, Div. 1181 is only tangentially related to the case at bar.

agreement.  Accordingly, joint employer status, without more, cannot bind a nonsignatory to such an agreement entered into by another employer.

## IV.   <u>Conclusion</u>

For all the foregoing reasons, the court declines to extend the joint employer theory of liability to hold nonsignatory employers liable under Section 515 of ERISA for obligations springing from a collective bargaining agreement signed by another employer.  Therefore, even assuming Carpenters is able to prove defendants were joint employers with the signatory Novinger's, Count III of Carpenters' complaint still fails to state a claim upon which relief can be granted.  Accordingly, the court will grant defendants' motion (Doc. 6) to dismiss with prejudice Count III of the complaint.[9]  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        October 15, 2015

---

[9] Count III will be dismissed with prejudice because it is legally rather than factually deficient, and thus incurable.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) (noting dismissal pursuant to Rule 12(b)(6) should grant leave to amend unless amendment would be futile or inequitable).